UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

HAROLD JOE BLACK                      CIVIL ACTION NO. 11-cv-1714

VERSUS                                JUDGE HICKS

JAMES LEBLANC, ET AL                  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

  Harold Joe Black ("Plaintiff") is a self-represented former prisoner. He filed this complaint against several prison officials for damages allegedly caused by his exposure to tobacco smoke while he was incarcerated as a convicted Department of Corrections ("DOC") prisoner. Plaintiff, now free on parole, was a prisoner when he commenced the action. He was banned from filing civil actions or appeals in forma pauperis due to his lengthy history of filing frivolous lawsuits, but the Chief Judge allowed Plaintiff to proceed as a pauper in this case.

  The complaint listed as defendants DOC Secretary James LeBlanc, Warden Jerry Goodwin of the David Wade Correctional Center ("DWCC"), and officials from other facilities where Plaintiff had been housed. The court screened the complaint and dismissed all claims as frivolous, given the general nature of the allegations and lack of any specific allegations that a particular defendant had any role in the alleged smoke exposure.

Plaintiff appealed, and the Fifth Circuit reviewed his allegations to assess whether if, taken as true, they stated a plausible claim. The Court agreed with the dismissal of all defendants except two: Secretary LeBlanc and Warden Goodwin. Those claims were remanded for further proceedings. Doc. 106; Black v. Concordia Parish Detention Center, 607 Fed. Appx. 440 (5th Cir. 2015).

After a period for discovery, the parties filed competing motions. Now before the court are (1) a Motion for Summary Judgment (Doc. 131) filed by LeBlanc and Goodwin; (2) Plaintiff's Motion for Summary Judgment (Doc. 138); and (3) Plaintiff's Motion to Stay Summary Judgment (Doc. 137). For the reasons that follow, it is recommended that Plaintiff's motions be denied, that Defendants' motion be granted, and that all claims in this action be dismissed.

**ETS Exposure and the Eighth Amendment**

The Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment right. First, the prisoner must show that he is being exposed to unreasonably high levels of ETS. Helling v. McKinney, 113 S.Ct. 2475, 2482 (1993). In assessing that factor, the court must conduct an inquiry into the seriousness of the potential harm and the likelihood that the smoke will actually cause such harm. Id. The court also has to determine whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Id. Second, the prisoner must show that prison authorities demonstrated a deliberate indifference to his plight. Id.

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Analysis**

    **A. DWCC Smoking Policy**

The Louisiana Smoke Free Air Act provides in La. R.S. 40:1300.256(A) that, except as permitted by subsection (B), no person shall (1) smoke in any public building, (2) smoke in any school, or (3) smoke in any public place and in any enclosed area within a place of employment. The statute also provides that an employer shall not knowingly permit smoking in any enclosed area within a place of employment. Subsection (B) provides that nothing in

the Act prohibits smoking in any of several listed places. Item numbers 6 and 14 on the list state:

> (6) The outdoor area of places of employment; except that the owner or manager of such business may post signs prohibiting smoking in any such outdoor area, which shall have the effect of making that outdoor area an area in which smoking is prohibited under the provisions of this Part....

> (14) Any state, local, or private correctional facility prior to August 15, 2009. After August 15, 2009, smoking shall be prohibited in any state, local, or private correctional facility.

Warden Goodwin testified in an affidavit about the smoking policy changes that accompanied the Smoke Free Air Act. The DOC enacted a written smoking policy in March 2009, months before the August 15, 2009 prohibition became effective. The policy stated that, beginning August 15, 2009, smoking is prohibited inside areas of public buildings and places of employment operated by the DOC, but "each Unit Head is authorized to designate smoking areas outside of these public buildings and places of employment."

The policy announced by Warden Goodwin for DWCC prohibited smoking or even possession of smoking materials by inmates in working cell blocks, segregation, or lockdown areas. Inmates assigned to dormitories could possess smoking materials but could not smoke in the housing unit or on the tier. Goodwin testified in his affidavit that at no time after the new policy took effect were inmates housed in the unit with Plaintiff given permission or allowed to smoke in the housing unit.

## B. Summary Judgment Evidence

Defendants offer an affidavit from Warden Goodwin (Doc. 141) that squarely challenges Plaintiff's allegations that Plaintiff was exposed to excessive levels of smoke or that Goodwin or LeBlanc were deliberately indifferent to such a situation. Warden Goodwin testified, as noted above, that offenders were not allowed to smoke in the housing units after March 2009, and DWCC officials did not allow inmates to smoke in the housing units in violation of the policy. Goodwin offered specific testimony that, at no time, did he authorize smoking at the prison contrary to the policy. He also testified that Secretary LeBlanc never authorized smoking at DWCC in violation of the policy, and LeBlanc did not instruct DWCC employees to ignore health risks associated with second-hand smoke.

Warden Goodwin acknowledged that Plaintiff filed an administrative grievance in January 2011 and complained about smoke exposure during his confinement at DWCC (which lasted from November 2009 to December 2011). In the grievance, attached to the affidavit as an exhibit, Plaintiff complained that in December 2011 the LSU Urology Clinic recommended that Plaintiff not be exposed to cigarette smoke because of "a very high possibility prostate cancer is developing." Assistant Warden Angie Huff responded at the first level. She pointed to the Department and DWCC policies against smoking and stated that prisoners housed on the north compound with Plaintiff were not allowed to smoke inside buildings. There were designated smoking areas outside, consistent with the policy. If prisoners were caught violating the policy, disciplinary actions were taken. Huff also encouraged Plaintiff to refrain from purchasing smoking materials from the canteen. She

admonished that Plaintiff's choice to purchase Bugler tobacco (a roll-your-own form of tobacco) and Grizzly snuff could be detrimental to his health.

Plaintiff pursued the grievance to step two. He cited the state law regarding smoking. He also stated that he had purchased both Bugler and Grizzly "for many reason other than using as Warden Huff wish to believe." Plaintiff attached a statement signed by several inmates that represented Plaintiff had not been seen smoking or using those two tobacco products. The step-two response issued from a designee of Secretary LeBlanc. The written response primarily addressed a second issue (not at issue in this suit) regarding a prescription medication and treatment plan. The smoking complaint was not specifically addressed, but the step-two response generally denied the grievance on the grounds that the first step response was appropriate.

Warden Goodwin testified further that Plaintiff never brought to his attention, either orally or in writing, a smoking violation along with the name of the violator. He stated that offenders who did violate the smoking policies were punished when caught. Goodwin stated that he had no involvement in responding to the grievance, and Secretary LeBlanc's only involvement was that LeBlanc's designee issued the unfavorable step-two response. Goodwin generally denied that he failed to provide a reasonably safe environment for Plaintiff.

Plaintiff's motion stated that it is supported by an attached affidavit and exhibits. There is no attached affidavit. There is an attached "Declaration of Injury & Dispute for Summary Judgment" that begins by stating it is made pursuant to 28 U.S.C. § 1746. A

declaration that is made in compliance with that statute may constitute competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003). Plaintiff, however, did not comply with the statute.

First, Plaintiff did not state that his declaration was made under penalty of perjury, which is critical to compliance. Second, the declaration is short on assertions of specific facts. It consists primarily of arguments and conclusory assertions that there are genuine factual issues for trial, but without articulating the actual facts that require resolution by trial. Third, and perhaps most important, the declaration ends with spaces for a signature and date, but Plaintiff did not sign or date the document. He certainly knows how to do so, as he signed and dated his memorandum and other submissions, and he has ample litigation experience. Thus, Plaintiff has presented no competent summary judgment evidence.

### C.  Exposure to Unreasonable Levels of ETS

The first prong of the Heller standard is whether Plaintiff was exposed to unreasonably high levels of ETS. Defendants submitted affidavit testimony that there were policies in place at the relevant time that prohibited smoking in Plaintiff's housing unit and other buildings at the prison. There were some outdoor areas where smoking was permitted, but there is no evidence that Plaintiff was required to live, work, or otherwise be present in those areas.

When a defendant squarely challenges a key element of a claim, it is the plaintiff's burden to come forward with competent summary judgment evidence and create a genuine dispute for trial. Once the moving party, here the defendants, meet their initial burden, the

burden shifts to the plaintiff to set forth specific evidence to support his claims. The plaintiff may not simply rest on the allegations in his complaint or on conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Robinson v. ICF Emergency Management Services, LLC, 453 Fed. Appx. 528, 531 (5th Cir. 2011), citing Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010). Plaintiff has not presented any competent evidence on this issue, so he has not met his burden. Both Defendants are entitled to summary judgment for this reason.

### D. Deliberate Indifference

Defendants also squarely challenged whether Plaintiff can satisfy the second prong of the Helling standard, which requires a prisoner to show that a defendant demonstrated deliberate indifference to his plight. To act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 114 S.Ct. 1970 (1994).

The uncontested summary judgment evidence offered by Defendants is that Goodwin never received any particular complaints from Plaintiff about smoke exposure, and neither Goodwin nor Secretary LeBlanc were personally involved in addressing Plaintiff's grievance. The mere fact that other employees under the supervision of the named defendants addressed the grievance does not present a grounds for liability. That is because there is no respondeat superior under 42 U.S.C. § 1983. A supervisory official may be held liable only if he affirmatively participates in the acts that cause a constitutional deprivation

or he implements unconstitutional policies that causally result in the constitutional injury. Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). There is no summary judgment evidence that either Goodwin or LeBlanc implemented unconstitutional policies or did anything inconsistent with the written policies that prohibited smoking in the housing units. There is, accordingly, no evidence that either man was deliberately indifferent to any smoke exposure. See also Porter, 659 F.3d at 448 (commissioner not personally liable for step-three denial signed by deputy commissioner).

### E. Plaintiff's Desire for More Discovery

The court issued an order (Doc. 124) dated May 9, 2016 that granted the parties leave to conduct discovery. The deadline for completion of discovery and filing any motions to compel was July 8, 2016. Plaintiff filed a Motion to Compel (Doc. 133) in late July, after the deadline, and complained that Defendants had not responded to written discovery that he served in May. The court denied the motion (Doc. 143) because Plaintiff did not comply with Local Rule 37.1 before filing the motion and because Defendants had since served responses to the discovery. The court also noted that many of the discovery requests were vague because Plaintiff frequently attempts to write in legalese, which makes it very difficult to understand him, when a plain English approach would serve his interests better.

Plaintiff filed a motion to reconsider, which complained about the adequacy of particular discovery responses. The court issued an order (Doc. 146) that the motion was granted in part and denied in part. Defendants were instructed to provide supplemental answers about how the smoking policy was enforced, why certain urology appointments were

canceled, whether Defendants knew that medical professionals had instructed that Plaintiff's exposure to smoke be minimized, and the like. Defendants filed a notice of compliance (Doc. 147) that included their supplemental responses.

In the meantime, the competing summary judgment motions were being filed. Plaintiff filed a Motion to Deny or Stay (Doc. 137) that was directed at Defendants' Motion for Summary Judgment. Plaintiff argued that he had not had a sufficient opportunity to learn the necessary facts and complete discovery. The motion pointed to the earlier motion to compel and similar discovery issues, which have been resolved. Plaintiff also argued in his Motion for Summary Judgment that Defendants' answers to his discovery requests would help him present his case.

After Defendants served their supplemental discovery responses, and after the summary judgment briefing was completed, Defendants filed a Motion to Stay Discovery (Doc. 148), which the court granted. Defendants correctly pointed out that they had raised the defense of qualified immunity and were entitled to have the validity of that defense determined before they were subjected to the burdens of any additional discovery.

Qualified immunity gives government officials a right to avoid both trial and the burdens of such pretrial matters as discovery. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). To stay summary judgment in order to allow discovery, the plaintiff's pleadings must assert facts which, if true, would overcome the defense of qualified immunity. Wicks v. Miss. State v. Emp't Servs., 41 F.3d 991, 994 (5th Cir., 1995. Then, if the court is unable to rule on the immunity defense without further clarification of the facts,

it may allow discovery narrowly tailored to uncover only those facts needed to rule on the immunity claim. Lion Boulos v. Wilson, 834 F.2d 504, 507-08 (5th Cir. 1987). See Rynearson v. U.S., 601 Fed. Appx. 302, 305-06 (5th Cir. 2015).

      Plaintiff was allowed a reasonable time to conduct discovery on any topic. Discovery was not stayed until after Plaintiff had served several forms of written discovery demands and received original and supplemental responses. Thus, Plaintiff was not denied discovery. He has not attempted to make use of the discovery information he did gain, and he has not articulated how any outstanding discovery requests would give rise to a genuine dispute of material fact on the issues discussed above. If Plaintiff believed that any discovery was outstanding, he should have presented the issue in his motion to compel.

      One of Plaintiff's main discovery complaints is that Defendants did not satisfactorily answer his questions about his perception that the DOC and DWCC policies are in conflict with the Louisiana Smoke Free Air Act. Plaintiff has focused on that issue throughout this suit, but it would not give rise to a constitutional violation actionable under Section 1983 even if Plaintiff established that a DOC or DWCC policy was in conflict with a proper interpretation of the Louisiana statute. A Section 1983 claim requires that a plaintiff show that a defendant violated federal laws or the Constitution. The statute does not permit a remedy for the mere violation of a department policy or even a state statute. Sylvester v. Cain, 311 Fed. Appx. 733, 735 (5th Cir. 2009) ("violations of state law and prison regulations, without more, do not state a viable constitutional claim under § 1983"); and Brown v. Williams, 124 Fed. Appx. 907, 909 (5th Cir. 2005) ("a mere violation of state law

does not state a constitutional claim under 42 U.S.C. § 1983"). Accordingly, any further discovery on that point would be futile in this case. Plaintiff's desire to conduct even more discovery is not good grounds to stay resolution of the pending motions for summary judgment.

**Conclusion**

Plaintiff has had ample opportunity to conduct discovery and develop his case, which has been pending for five years. He knows from his extensive litigation history how to present summary judgment arguments, but he has presented only a declaration that is not in proper form and is not even signed.[1] His complete lack of evidence to contest the specific factual evidence presented by Defendants requires summary judgment in favor of Defendants. Plaintiff has not demonstrated that any additional narrowly tailored discovery would present him with evidence that he does not already have that could defeat summary judgment.[2]

---

[1] If the past is any indication, Plaintiff will object to this Report and Recommendation and attempt to present evidence that he could and should have presented in the briefing of the motions for summary judgment. A district judge has discretion to reject newly-proffered evidence when it was not presented to a magistrate judge; litigants may not use the magistrate judge as a mere sounding-board before finally putting together their case. See Hewitt v. Bedford, 2015 WL 574337 (W.D. La. 2015) (Foote, J.), citing Performance Autoplex II Ltd. v. Mid–Cont'l Cas. Co., 322 F.3d 847, 862 (5th Cir. 2003).

[2] A similar claim against former DOC Secretary James Arnold and Assistant Warden Angie Huff was tried before a jury in August 2014. The case was presented by a DWCC prisoner who is also experienced in litigation. The jury was asked if the inmate had proved by a preponderance of the evidence that he was exposed to unreasonably high levels of ETS and that either defendant acted with deliberate indifference to his situation.

Accordingly,

IT IS RECOMMENDED that Plaintiff's Motion for Summary Judgment (Doc. 138) and Plaintiff's Motion to Stay Summary Judgment (Doc. 137) be denied.

IT IS FURTHER RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 131) be granted and that all claims against James LeBlanc and Jerry Goodwin be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

---

The jury answered no with respect to both defendants, which resulted in a verdict for the defendants. Clarence Samuels v. Arnold, 11-CV-0201.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of October, 2016.

Mark L. Hornsby
U.S. Magistrate Judge